# UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

# FORT MYERS DIVISION

TAHER SHRITEH,

               Plaintiff,

    v.

NYP HOLDINGS, INC.,
JOSH CHRISTENSON,
In his individual and professional capacity,

               Defendants.

Case No. 2:25-cv-00704-SPC-DNF

## DEFENDANTS' DISPOSITIVE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND INCORPORATED <u>MEMORANDUM OF LAW</u>

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND .................................................................................. 3

   A.  The Parties ................................................................................................ 3

   B.  The Article ................................................................................................ 3

   C.  The Revisions ........................................................................................... 4

   D.  The Complaint .......................................................................................... 6

ARGUMENT .......................................................................................................... 7

   A.  Statement Nos. 2 and 4 Are Protected by the Fair Report Privilege ........... 8

      1.  New York's Fair Report Privilege Applies ............................................. 9

      2.  The Fair Report Privilege Provides Absolute Immunity to Reporting on the New York AG's Complaint and the Israeli Court Determination (Statement Nos. 2 and 4) .............................................................. 11

      3.  The Statements Are Also Protected Under Florida's Fair Report Privilege 14

   B.  Statement Nos. 3 and 5 Are Protected Opinion .......................................... 15

   C.  Statement No. 1 Is Substantially True. ...................................................... 18

   D.  Plaintiff Has Not Alleged Actual Malice as to Any of the Statements ......... 19

   E.  Plaintiff Fails to Properly Allege Damages ................................................ 24

CONCLUSION ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arpaio v. Cottle*,
  404 F.Supp.3d 80 (D.D.C. 2019) ......................................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................7, 8

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ...........................................................22

*Bobulinski v. Tarlov*,
  758 F.Supp.3d 166 (S.D.N.Y. 2024) ................................................... 20

*Buckley v. Littell*,
  539 F.2d 882 (2d Cir. 1976) ........................................................... 17

*D'Annunzio v. Ayken, Inc.*,
  876 F.Supp.2d 211 (E.D.N.Y. 2012) ................................................... 11

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ..........................................................3

*Dworkin v. Hustler Mag. Inc.*,
  867 F.2d 1188 (9th Cir. 1989) ......................................................... 21

*Fairbanks v. Roller*,
  314 F.Supp.3d 85 (D.D.C. 2018) ...................................................... 21

*Folta v. N.Y. Times Co.*,
  2019 WL 1486776 (N.D. Fla. Feb. 27, 2019) ..................................... 14, 15

*Forte v. Jones*,
  2013 WL 1164929 (E.D. Cal. Mar. 20, 2013) ......................................... 17

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 334, 342 (1974) ......................................................... 19

*Global Relief Found. v. N.Y. Times Co*,
  2002 WL 31045394 (N.D. Ill. Sept. 11, 2002) ....................................... 10

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
  491 U.S. 657 (1989) ...................................................................23

*Howard v. Antilla,*
  294 F.3d 244 (1st Cir. 2002) ....................................................22

*Jackson v. United Steel, Paper & Forestry, Rubber, Mfg.,*
  *Energy, Allied Indus. & Serv. Workers Int'l Union,*
  2009 WL 10704261 (N.D. Ala. Feb. 23, 2009).......................... 17

*Jacoby v. Cable News Network, Inc.,*
  2021 WL 5858569 (11th Cir. Dec. 10, 2021) ........................... 21

*Judge v. Am. Motors Corp.,*
  908 F.2d 1565 (11th Cir. 1990) .................................................10

*Keller v. Miami Herald Publ'g Co.,*
  778 F.2d 711 (11th Cir. 1985) .................................................. 15

*Klayman v. City Pages,*
  650 F.App'x 744 (11th Cir. 2016) ................................ 8, 18, 19

*Klayman v. Judicial Watch, Inc.,*
  22 F.Supp.3d 1240 (S.D. Fla. 2014) ........................................18

*Larreal v. Telemundo of Fla., LLC,*
  489 F.Supp.3d 1309 (S.D. Fla. 2020) ......................................14

*Levan v. Cap. Cities/ABC, Inc.,*
  190 F.3d 1230 (11th Cir. 1999) ................................................23

*Mamani v. Berzain,*
  654 F.3d 1148 (11th Cir. 2011) .................................................. 8

*Masson v. New Yorker Mag., Inc.,*
  501 U.S. 496 (1991)..................................................................18

*Michel v. NYP Holdings, Inc.,*
  816 F.3d 686 (11th Cir. 2016).........................................*passim*

*Miller v. Gizmodo Media Grp., LLC,*
  2019 WL 1790248 (S.D. Fla. Apr. 24, 2019)........................9, 10, 11

*N.Y. Times Co. v. Sullivan,*
  376 U.S. 254 (1964) .................................................................22

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.,*
  951 F.3d 952 (8th Cir. 2020)..............................................................................23

*Nix v. ESPN, Inc. (Nix I),*
  2018 WL 8802885 (S.D. Fla. Aug. 30, 2018) ..............................................10, 11

*Nix v. ESPN, Inc. (Nix II),*
  772 F.App'x 807 (11th Cir. 2019).........................................................8, 9, 10, 11

*Open Sea Distrib. Corp. v. Artemis Distrib., LLC,*
  692 F.Supp.3d 1151 (M.D. Fla. 2023) ............................................................. 24

*Reed v. Chamblee,*
  2023 WL 6292578 (M.D. Fla. Sept. 27, 2023) ................................................ 17

*Reed v. Chamblee,*
  2025 WL 1874638, (11th Cir. July 8, 2025).......................................... 3, 20, 23

*Risk Ins. & Reinsurance Sols. v. R + V Versicherung,*
  2007 WL 9700868, at *6 n.10 (S.D. Fla. June 6, 2007) ................................. 24

*Sharon v. Time, Inc.,*
  599 F.Supp. 538 (S.D.N.Y. 1984) .................................................................... 12

*Standing Comm. on Discipline v. Yagman,*
  55 F.3d 1430 (9th Cir. 1995) ........................................................................... 17

*Turner v. Wells,*
  879 F.3d 1254 (11th Cir. 2018) .......................................................... 15, 16, 20

*UTEX94 LLC v. Danta,*
  2018 WL 11472417 (S.D. Fla. Nov. 7, 2018).................................................... 16

*Wilkow v. Forbes, Inc.,*
  2000 WL 631344 (N.D. Ill. May 15, 2000)....................................................... 10

*Zerman v. Sullivan & Cromwell,*
  677 F.Supp. 1316 (S.D.N.Y. 1988) ................................................................... 11

**State Cases**

*Alan v. Palm Beach Newspapers, Inc.,*
  973 So.2d 1177 (Fla. 4th DCA 2008)................................................................ 14

*Bishop v. Wometco Enters.,*
  235 So.2d 759 (Fla. 3d DCA 1970) ................................................................... 18

*Byrd v. Hustler Mag., Inc.,*
    433 So.2d 593 (Fla. 4th DCA 1983) ................................................. 15

*Edelstein v. WFTV, Inc.,*
    798 So.2d 797 (Fla. 4th DCA 2001) ................................................. 24

*Freedom Newspapers of Tex. v. Cantu,*
    168 S.W.3d 847 (Tex. 2005) .............................................................23

*Goguen v. NYP Holdings, Inc.,*
    2024 MT 47, 415 Mont. 356, 544 P.3d 868 ..................................... 11

*Rigmaiden v. NBCUniversal Media, LLC,*
    307 So.3d 918 (Fla. 3d DCA 2020) ................................................. 14

*Stallworth v. Hosp. Rentals, Inc.,*
    515 So.2d 413 (Fla. 1st DCA 1987).................................................. 9

*Stewart v. Sun Sentinel Co.,*
    695 So.2d 360 (Fla. 4th DCA 1997) ................................................. 8

*Stone v. Bloomberg L.P.,*
    163 A.D.3d 1028 (2018) ................................................................... 12

*Ward v. Zelikovsky,*
    643 A.2d 972 (N.J. 1994) ................................................................. 17

*Woodard v. Sunbeam Television Corp.,*
    616 So.2d 501 (Fla. 3d DCA 1993) ............................................ 12, 14

*Zambrano v. Devanesan,*
    484 So.2d 603 (Fla. 4th DCA 1986).................................................16

**State Statutes**

Fla. Stat. Ann. § 770.01............................................................5, 25

Fla. Stat. Ann. § 770.02(2)(a)........................................................25

N.Y. Civ. Rights Law § 74 ............................................................ 11

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................ 1, 7

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants NYP Holdings, Inc. and Josh Christenson (collectively, "Defendants")—respectively, the owner and publisher of *The New York Post* ("the *Post*") and a *Post* employee—move for the entry of an order dismissing with prejudice the Second Amended Complaint [ECF No. 29] because it fails to state a claim.

## PRELIMINARY STATEMENT

On March 10, 2025, the *Post* published an article (the "Article") about a lawsuit filed by the New York Attorney General concerning certain companies' alleged marketing and sale of addictive vapes and e-cigarettes to minors. The *Post* discovered that one of the defendant-companies in that lawsuit, Safa Goods, had connections to Plaintiff Taher Shriteh—a prominent Gaza-based journalist in the 1990s. The Article accurately reported on allegations against Safa Goods in the New York lawsuit and Shriteh's run-ins with the Israeli government, including a court denying him bail based on alleged collaboration with Hamas.

Soon after publication, Plaintiff, through his lawyer and public relations representative, reached out to Defendants about several statements in the Article. Most of the statements that Plaintiff's representative took issue with were either privileged fair reports of the New York lawsuit and the Israeli court finding or matters of opinion, protected by the First Amendment. Plaintiff's representative only identified one factual inaccuracy—the Article's statement that Shriteh was the co-founder of Safa Goods—although he did not dispute that Shriteh's son and nephew owned the company and conceded that Plaintiff sourced products from

Safa Goods, which he sold in his vape stores across Florida. Defendants promptly corrected the co-founder inaccuracy and added an editor's note, noting the correction. Additionally, purely as a courtesy and in their editorial discretion, Defendants made some additional edits to the Article.

Despite these changes and several exchanges between the parties' counsel, Plaintiff filed this lawsuit alleging that the challenged statements—most of which no longer exist in the revised Article—are defamatory. This case, however, clearly has no merit as three essential elements—falsity, fault, and damages—are not and cannot be adequately alleged, and some of the statements are privileged.

**First**, the statements regarding the Israeli court hearing and the New York Attorney General's lawsuit are subject to the fair report privilege. The fair report privilege precludes liability where, as here, Defendants accurately reported on official proceedings. **Second**, several of the statements in the Article are opinion based on disclosed facts, which is protected by the First Amendment. For example, the *Post*'s statements that Plaintiff was "Israel-hating" and had a "history of anti-Israel advocacy" are opinion based on a court hearing in which a judge determined that Shriteh's journalistic work "crossed the line" into support for Hamas.

**Third**, Plaintiff has not and will not be able to adequately allege that Defendants published the Article with reckless disregard for its truth or with knowledge of any falsity, *i.e.*, with actual malice. There is no evidence that Defendants knew that Plaintiff was not the co-founder of Safa Goods when they published that statement—to the contrary, Defendants immediately corrected it

when they were notified of the inaccuracy. Courts have found such conduct constitutes evidence of *lack* of actual malice. In any event, the "gist" or "sting" of this statement is true, as Plaintiff sources products from Safa Goods and his son and nephew own it. ***Fourth***, Plaintiff has not alleged any damages, pointing only to harms allegedly suffered by his son, who is not a party to this litigation. Accordingly, this case should be dismissed in its entirety with prejudice. *Reed v. Chamblee*, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025) (dismissing defamation claim with prejudice where, as here, plaintiff had amended his complaint but still failed to sufficiently allege the elements of defamation), *rehearing en banc denied*.

## FACTUAL BACKGROUND

### A.    The Parties

Plaintiff Taher Shriteh is a Florida resident and owner of Orange Wholesale, LLC (Ex. B at 1), which operates 17 retail stores in Florida, under the name "The King of Vape." SAC ¶¶ 6, 16.[1] Before immigrating to the U.S., Plaintiff was a journalist working in Gaza. *Id.* ¶ 20. Defendant NYP Holdings, Inc. is the owner and publisher of the *Post*, and has its principal place of business in New York. *Id.* ¶ 7. Defendant Josh Christenson is the *Post*'s D.C Bureau Chief. *Id.* ¶¶ 7–8.

### B.    The Article

---

[1] The facts set forth in this section are taken from the allegations of the SAC, as well as several documents referenced in the SAC and/or central to Plaintiff's claims, which are attached as exhibits to the Declaration of Laura R. Handman. The Court may consider these documents on "a motion to dismiss without converting the motion into one for summary judgment [where, as here]... the attached document[s are] ... (1) central to the plaintiff's claim and (2) undisputed"—meaning "that the authenticity of the document[s] is not challenged."  *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

On March 10, 2025, the *Post* published an article originally titled, "Florida's Israel-hating 'King of Vape' faces bipartisan crackdown on sale of illicit, kid-friendly Chinese e-cigs" on its website. SAC ¶ 9; Ex. A. The Article quoted a lawsuit filed by New York AG Letitia James against a Florida-based company called Safa Goods for "illegal and fraudulent business practices" that "targeted underage users" by using "appealing colors and flavors to hook kids for life." Ex. A at 2–3. The Article identified Plaintiff as a cofounder of Safa Goods. SAC ¶ 10.

The Article also reported that before Plaintiff sold vapes, he was a reporter in Gaza and contributed to the *New York Times* and *Reuters*. Ex. A at 4. It explained that, according to a linked *New York Times* article, Plaintiff had been "found by an Israeli court in the 1990s to have been aiding Hamas while working as a journalist in the Gaza Strip" by "reporting out information from a Hamas leaflet." *Id*. at 1, 5; Ex. C at 1; SAC ¶ 10. Based on this fact, the Article characterized Plaintiff as having a "history of anti-Israel advocacy." SAC ¶ 10. The Article further noted that Ahmed Shriteh, Plaintiff's relative and director of Safa, had previously worked for the United Nations Relief and Works Agency for Palestinian Refugees ("UNRWA")—an organization the Article noted the U.S. had stopped funding after several of its employees were involved in the October 7, 2023 Hamas attack. Ex. A at 5; SAC ¶ 25.  (The Article did not allege Shriteh or his relative were involved in the attack.)

### C.    The Revisions

Plaintiff claims his representatives contacted the *Post* about the Article on

March 17, 2025, requesting a retraction.[2] SAC ¶ 35; Ex. D. Plaintiff's counsel claimed that several phrases in the Article were defamatory of Plaintiff. *See* Ex. D at 1–3. Plaintiff's representative further noted, in email correspondence to the *Post*, that while Plaintiff owns vape stores in Florida and sources his products from Safa Goods, he has no legal affiliation to Safa Goods and was not named in the New York AG's complaint. SAC ¶¶ 10–14; 36; Ex. E at 2. The representative also did not dispute that Safa Goods was owned by Plaintiff's son and nephew. *See* Ex. E.

The *Post* revised the Article to accurately state: "Safa Goods, one of the largest vape distributors in the US, which is run by [Plaintiff's] son Haitham and nephew Ahmed Shriteh, was founded at the same Port Charlotte address [as Plaintiff's company, Orange Wholesale, LLC] in 2018 but has since changed locations, Florida Division of Corporations records show." Ex. B at 2; *see also* SAC ¶ 36. The Post further added that all "three Shritehs recently appeared in Florida federal court filings over a trademark dispute" regarding their businesses' sale of e-cigarettes made in China—and those filings noted that, at the time, Orange Wholesale was an "affiliate" of Safa. *See* Ex. B at 2. The *Post* added a correction to the Article stating: "A previous version of this article stated that Shriteh cofounded Safa." *Id.* at 7. And the *Post* added a comment from Plaintiff's representative that he "does not own, manage, or have any legal affiliation with Safa Goods"; is "a U.S. citizen with no criminal record and no ties—past or present—to any extremist

---

[2] In Florida, defamation plaintiffs are required to provide notice to media defendants of their alleged defamatory conduct at least five days before filing suit. Fla. Stat. Ann. § 770.01.

organization"; and "a respected former journalist and business owner whose retail stores operate within lawful age restrictions." *Id.*

Plaintiff's SAC acknowledges that Defendants (through counsel) further communicated with Plaintiff regarding the Article. SAC ¶ 35. However, while the Complaint selectively quotes the portion of a March 25, 2025, email where Defendants' counsel defended certain statements in the Article as "protected opinion," *id.*, it fails to acknowledge the remainder of the correspondence in which Defendants' counsel noted that while Plaintiff's arguments did not give rise "to any cognizable legal claim," the *Post* made a few additional edits to the Article on March 25 "as a courtesy and in its exercise of editorial discretion," Ex. F; *see also* Ex. B. For example, the final Revised Article:

- removes the terms "Israel-hating" and "with a history of anti-Israel advocacy", *compare* Ex. B at 1, *with* Ex. A at 1;
- removes the term "illicit" from references to Safa Goods in the Article, *compare* Ex. B at 1–4, *with* Ex. A at 1, 2;
- clarifies that the Israeli judge's comments were related to a bail hearing and includes a comment from Plaintiff that he "was only engaging in routine journalism, and was eventually released without charges", Ex. B at 6; and
- clarifies that Plaintiff's relative, Ahmed Shriteh, claimed to have concluded his work with UNRWA in 2012 and had no relationship with Hamas, *id.*

### D.    The Complaint

On April 15, 2025, despite Defendants' good-faith cooperation, Plaintiff brought suit in the U.S. District Court for the Southern District of Florida, alleging claims for libel *per se* and libel *per quod.* ECF No. 1. On July 30, 2025, the Court *sua sponte* transferred the case to the Middle District of Florida. ECF No. 23. On

August 8, 2025, this Court dismissed the complaint without prejudice due to lack of subject matter jurisdiction. ECF No. 27. On August 20, 2025, Plaintiff filed his Second Amended Complaint. ECF No. 29. In the SAC, Plaintiff alleges that the following alleged statements or implications are false and defamatory:

- **Statement No. 1**: that Plaintiff was the co-founder of a company called Safa Goods;
- **Statement No. 2**: that Plaintiff was involved in a lawsuit filed by New York AG Letitia James related to the sale of illicit Chinese e-cigs to minors in New York;
- **Statement No. 3**: that Plaintiff was an "Israel hater" with a history of anti-Israel advocacy;
- **Statement No. 4**: that an Israeli court ruled that Plaintiff was a Hamas supporter; and
- **Statement No. 5**: that Shriteh deals in "illicit" goods sold to minors.

SAC ¶¶ 10, 15. Most of these statements no longer remain in the Revised Article—and some mischaracterize the Original Article's language. For example, the Original Article did not say that Plaintiff was a party to the New York AG's lawsuit, but rather that **Safa Goods** was a party (which is true). While the Complaint alleges that "[d]espite some minor revisions made to the article, there remain several defamatory statements and insinuations," *id.* ¶ 36, Plaintiff's counsel has been unable to identify them. Plaintiff seeks punitive damages, *id.* ¶ 47, and alleges his son was recently detained by authorities at JFK Airport, *id.* ¶¶ 28–29.

## ARGUMENT

Plaintiff's claims must be dismissed for failure to state a claim. Under Federal Rule of Civil Procedure Rule 12(b)(6), a plaintiff must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). The Court need not accept "[l]egal conclusions without adequate factual support." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Where, as here, a plaintiff has not "not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Twombly*, 550 U.S. at 570.

Because meritless defamation lawsuits, like this one, risk chilling protected speech and force media defendants to incur unnecessary costs, courts routinely dismiss libel claims at the pleading stage. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (granting a pre-answer dismissal motion, noting the "costs and efforts required to defend a lawsuit through [later] stage[s] of litigation could chill free speech"); *Stewart v. Sun Sentinel Co.*, 695 So.2d 360, 363 (Fla. 4th DCA 1997) ("[I]n defamation cases ... pretrial dispositions are 'especially appropriate' because of the chilling effect these cases have on freedom of speech.").

In Florida, "defamation is composed of the following elements: (1) publication, (2) a defamatory statement, (3) falsity, and (4) actual damages." *Klayman v. City Pages,* 650 F.App'x 744, 749 (11th Cir. 2016). When the published statements are subject to a privilege, the defamation claim fails. *Nix v. ESPN, Inc. (Nix II)*, 772 F.App'x 807, 814 (11th Cir. 2019) (affirming dismissal based on the fair report privilege). Plaintiff has failed to state a claim as the challenged statements are subject to the fair report privilege, are protected opinion, are substantially true, were not published with actual malice, and/or have caused no cognizable damage.

### A.    Statement Nos. 2 and 4 Are Protected by the Fair Report

**Privilege**

### 1.    New York's Fair Report Privilege Applies

Under both Florida and New York law, the fair report privilege protects accurate reporting of official proceedings. The privilege is absolute under New York law, and qualified under Florida law. *See Nix II*, 772 F.App'x at 810; *see also Miller v. Gizmodo Media Grp., LLC*, 2019 WL 1790248, at *4 (S.D. Fla. Apr. 24, 2019) ("While Florida follows the common law privilege of the Restatement (Second) of Torts section 611, New York follows a codified absolute fair report privilege.") (applying choice of law analysis and finding New York's law applied). In diversity actions, when there is a conflict of law, the district court must determine which state's law to apply, according to the forum state's choice-of-law principles. *See Michel*, 816 F.3d at 694.

Florida applies the "most significant relationship" test, which determines the law applicable to an issue by considering: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Nix II*, 772 F.App'x at 809. Importantly, in Florida, the "most significant relationship" test "does not require the court … to determine which state's local law should be applied to all issues in the *case* as a whole; rather, the contacts must be evaluated with respect to the particular *issue* under consideration." *Stallworth v. Hosp. Rentals, Inc.*, 515 So.2d 413, 415 (Fla. 1st DCA 1987). Accordingly, "the law

of a foreign state may control one issue while the law of Florida controls another." *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1578 (11th Cir. 1990); *Wilkow v. Forbes, Inc.*, 2000 WL 631344 (N.D. Ill. May 15, 2000) ("[t]he issue of whether a statement is defamatory ... is distinct [for choice of law analysis] from the issue of whether that statement is privileged"), *aff'd*, 241 F.3d 552 (7th Cir. 2001); *see also Global Relief Found. v. N.Y. Times Co*, 2002 WL 31045394, at *11 (N.D. Ill. Sept. 11, 2002) (Illinois law applied to the underlying defamation claim while California law applied to defenses). Here, New York's fair report privilege should be applied.

First, the place where the injury occurred weighs in favor of New York. While Plaintiff lives in Florida, the only injury Plaintiff has alleged—his son's detention at JFK airport—occurred in New York. *Nix II*, 772 F.App'x at 810 (affirming application of New York fair report privilege, where "Appellants only alleged specific injuries in New York"); *Miller*, 2019 WL 1790248, at *5.

The second and third factors also weigh in favor of applying New York's privilege. The Article was published online by the *Post*—owned by NYP Holdings, whose principal place of business is in New York. *See Miller*, 2019 WL 1790248, at *5 ("Defendants' most significant conduct—publishing the allegedly defamatory article—took place in New York"); *Nix v. ESPN, Inc. (Nix I)*, 2018 WL 8802885, at *4 (S.D. Fla. Aug. 30, 2018) ("[T]his factor weighs somewhat in favor of applying New York law because the decision to publish the original article was made by Defendant AP in New York."). And the Article itself related to a complaint by the New York AG.

The fourth factor is neutral, as the Parties had no pre-existing relationship before publishing the Article. *See Miller*, 2019 WL 1790248, at *6. In addition, "affirmative defenses to defamation exist to protect speakers, not to provide Plaintiffs a remedy." *Nix I*, 2018 WL 8802885, at *5. "New York, therefore, has a stronger interest in determining the applicability of affirmative defenses where, as here, the decision to publish was made" by a New York entity. *Id.; see also Goguen v. NYP Holdings, Inc.*, 2024 MT 47, ¶ 38, 415 Mont. 356, 544 P.3d 868 (analysis "weigh[s] in favor of applying New York's privilege because the fair report privilege protects the media; the conduct occurred in New York; NYP's place of business is in New York; and the injury … occurred nationwide.").

### 2.     The Fair Report Privilege Provides Absolute Immunity to Reporting on the New York AG's Complaint and the Israeli Court Determination (Statement Nos. 2 and 4)

Under New York law, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. Civ. Rights Law § 74. A report is "fair and true" within the meaning of this statute if "the substance of the article [is] substantially accurate." *D'Annunzio v. Ayken, Inc.*, 876 F.Supp.2d 211, 217 (E.D.N.Y. 2012). "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Zerman v. Sullivan & Cromwell*, 677 F.Supp. 1316, 1322 (S.D.N.Y. 1988); *see also Nix II*, 772 F.App'x at 812.

The privilege applies to actions by domestic as well as foreign governments, such as the Israeli court at issue in the Article. *Stone v. Bloomberg L.P.*, 163 A.D.3d 1028, 1030 (2018) ("[W]e disagree with the [lower court's] determination that the privilege is inapplicable to reporting on foreign official proceedings ...."); *Sharon v. Time, Inc.*, 599 F.Supp. 538, 564 (S.D.N.Y. 1984) (applying fair report privilege to Israel's Kahan Commission Report). Importantly, if a document is protected by the privilege, the press "has no duty to determine the accuracy of the information contained" in the document. *Woodard v. Sunbeam Television Corp.*, 616 So.2d 501, 503 (Fla. 3d DCA 1993).

Here, Defendants' reporting on Statement Nos. 2 and 4—the Israeli court hearing and the New York AG's complaint—is subject to the fair report privilege. In the Article, Defendants reported that in 1991, "an Israeli judge found that Shriteh 'crossed the line in his work as a journalist' and 'became an activist for a terror organization' by reporting out information from a Hamas leaflet to readers," quoting from and linking to a *New York Times* article that had reported the proceeding contemporaneously. *See* Ex. A at 5; *see also* Ex. C. That *New York Times* article reported that the bail hearing was captured by a court stenographer and stated:

> After hours of argument, the judge ruled that bail could not be granted because "the suspect [Taher Shriteh] crossed the line in his work as a journalist. When he supplied information for readers, he became an activist for a terror organization."

Ex. C at 2. This article makes clear that Plaintiff was being held in an Israeli jail for "reporting details of leaflets from the Islamic group, Hamas, to one of his

employers, Reuters." *Id.* at 1. Plaintiff alleges it is false that an "Israeli court found that Shriteh aided Hamas by virtue of his factual reporting over thirty four years ago." SAC ¶¶ 22, 55. However, there is no question that is what the Israeli judge stated on the record during the court proceeding. Ex. C. And while Plaintiff notes he "has never been convicted of any crime," *id.* ¶ 24, the Article never said he was— it merely reported the Israeli court's finding, just as the *New York Times* did. Because the statement regarding the Israeli court's proceeding is accurate, it cannot support a defamation claim.

Additionally, the fair report privilege protects Defendants' reporting on the New York AG's complaint against Safa Goods. Contrary to the SAC, the Article always said that ***Safa Goods*** was involved in the lawsuit with the New York AG, which is true. Once the Post learned that Shriteh was not the co-founder of Safa Goods, it immediately updated the Article accordingly. But this does not change the underlying fact that the fair report privilege protects the fair and accurate reporting of the New York AG's allegations against Safa Goods itself.

Indeed, the AG alleges in that case, "the purpose of this lawsuit is to stop Defendants' illegal and fraudulent business practices," Ex. G (AG Compl.) ¶ 8, which included "target[ing] underage users." *Id.* ¶ 3. The complaint further characterizes the selling of "unique blends of flavors" to target such users as "illicit conduct," *id.* ¶ 198, and alleges that "[t]he major manufacturers of Flavored E-Cigarettes are principally located in China." *Id.* ¶ 157. Thus, Defendants' shorthand characterization of the conduct as the "sale of illicit, kid-friendly Chinese e-cigs,"

13

*see* Ex. A at 1, is based on specific allegations within the AG's complaint. Because these statements are also fair reports of official court proceedings, they cannot be the basis of Plaintiff's defamation claim.

### 3.   The Statements Are Also Protected Under Florida's Fair Report Privilege

Even if the Court finds that New York's fair report privilege does not apply, Statements Nos. 2 and 4 are still protected under Florida's privilege. Though qualified, Florida has a "'broad' fair report privilege", *Larreal v. Telemundo of Fla., LLC*, 489 F.Supp.3d 1309, 1322 (S.D. Fla. 2020), that requires only that the reporting be "'accurate and complete or a fair abridgment' of the underlying information,'" *Folta v. N.Y. Times Co.*, 2019 WL 1486776, at *8 (N.D. Fla. Feb. 27, 2019).[3] "Fair abridgment can occur when media defendants accurately summarize separable portions of government records." *Id*. The Florida fair report privilege applies "even if the official documents [reported on] contain erroneous information." *Rigmaiden v. NBCUniversal Media, LLC*, 307 So.3d 918, 918 (Fla. 3d DCA 2020) (per curiam). The press has no duty to determine the accuracy of the information it receives from government sources. *See Woodard*, 616 So.2d at 502-03.

Here Defendants' reliance on matters of public record, particularly the New

---

[3] That this privilege is "qualified" means only that the report of the underlying government or court documents must be accurate. *Alan v. Palm Beach Newspapers, Inc.*, 973 So.2d 1177, 1180 (Fla. 4th DCA 2008).

York Attorney General's complaint and the Israeli court statements, triggers the protections of the Florida fair report privilege. *See Folta*, 2019 WL 1486776, at *2. It is unquestionable that Defendants reported on those records and proceedings accurately. Plaintiff primarily objects not to the inaccuracy of these statements that were included, but that the *Post* did not include more information. But, "Defendants are under no obligation to include additional information that would portray the Plaintiff in a more favorable light. The press can select the focus of their own publications, without regard to presenting both sides of every issue." *Id.* at *8 ("that the newspaper had reported on plaintiff's dismissal without also noting ... [mitigating factors]" did not remove the protections of the fair report privilege). Because Defendants accurately reported on matter of public record, Florida's fair report privilege also shields them from liability.

### B.    Statement Nos. 3 and 5 Are Protected Opinion

Even if the fair report privilege did not apply (and it does), several of the challenged statements are rhetorical hyperbole, epithets, and/or protected opinions upon which Plaintiff's claim cannot be based. "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Byrd v. Hustler Mag., Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983). Accordingly, "statements that are not readily capable of being proven false and statements of pure opinion are protected from defamation actions." *Turner v. Wells*, 879 F.3d 1254, 1262–63 (11th Cir. 2018); *see also Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 717 (11th Cir. 1985) ("Opinions are protected from defamation actions by the first amendment.").

"Whether the statement is one of fact or opinion ... [is a] question[] of law for the court." *Turner*, 879 F.3d at 1262–63.

"Under Florida law, a defendant publishes a 'pure opinion' when [it] makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader ...." *Id*. And "[w]here the speaker or writer presents the facts at the same time he or she offers independent commentary, a finding of pure opinion will usually result." *Zambrano v. Devanesan*, 484 So.2d 603, 606 (Fla. 4th DCA 1986). "[E]ven if the ... writer does not present the facts, or does not present all of them, like comments may still justify a finding of pure opinion where the facts are already known to the audience." *Id*.

Here, Statement No. 3 cannot form the basis of a defamation action because it is pure opinion, supported by disclosed facts and/or constituting hyperbole. Statement No. 3 referred to Plaintiff as "Israel-hating" and having "a history of anti-Israel advocacy." SAC ¶¶ 9-10. But those opinions are supported by facts that the Article clearly discloses: that an Israeli court found that Plaintiff was assisting Hamas through his journalistic work. *See* Ex. A at 1. The Article even linked to the contemporaneous reporting that described the hearing. *See* Ex. C.

However, even on their own, statements like these—accusations of bigotry or prejudice—are routinely found to be nonactionable as protected opinion. Courts have long held that assertions of bigotry, racism, prejudice, and political extremism are in the eye of the beholder, and therefore constitute subjective opinion that cannot be the basis for a defamation claim. *See, e.g.*, *UTEX94 LLC v.*

*Danta*, 2018 WL 11472417, at *4 (S.D. Fla. Nov. 7, 2018) ("Accusations of bigotry or bias generally amount to 'mere name calling ....'"); *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (describing judge as "anti-Semitic" was non-actionable opinion); *Forte v. Jones*, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("[T]he allegation that a person is a 'racist' ... is not actionable because the term 'racist' has no factually-verifiable meaning."). In modern political speech, accusations of "hating Israel" are "so debatable, loose and varying" in meaning that they are "insusceptible to proof of truth or falsity." *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976).[4] Here, however, Defendants did not simply throw out the epithet, they also provided the facts that led them to that conclusion. In other words, while the accusations of being "Israel-hating" alone are not actionable as epithets with "debatable, loose" meanings, Defendants' statements are also pure opinions with the facts supporting their opinion clearly disclosed.[5]

---

[4] *See also, e.g. Jackson v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 2009 WL 10704261, at *39 (N.D. Ala. Feb. 23, 2009) (statement that plaintiff "was a 'racist' and a 'radical'" non-actionable); *Ward v. Zelikovsky*, 643 A.2d 972, 983 (N.J. 1994) (accusation that plaintiffs "hate[d] ... Jews" non-actionable).

[5] Plaintiff also takes issue with the Article's mention of the October 7, 2024, Hamas attack. SAC ¶ 25. This portion of the Article did not mention Plaintiff, but rather simply noted that Plaintiff's relative used to work for UNRWA—an agency that the U.S. de-funded after some of its members were allegedly involved in the October 7 attack. *See* Ex. A at 5. The Article never says Plaintiff or his relative were among those employees. Accordingly this part of the Article is not "of and concerning" Plaintiff and therefore inactionable. *Reed v. Chamblee*, 2023 WL 6292578, at *9 (M.D. Fla. Sept. 27, 2023) (Corrigan, J.) ("Florida law requires that any alleged defamation be must 'of and concerning' the plaintiff.... [i]n other words, ... 'specifically directed at the plaintiff' to be actionable."), *aff'd*, 2025 WL 1874638 (11th Cir. July 8, 2025).

Similarly, Plaintiff objects to the use of "illicit" to characterize the e-cigarette sales at issue in the New York AG's lawsuit (Statement No. 5), but this is also protected opinion. SAC ¶¶ 9–10. As stated in the Article, Defendants characterized the e-cigarettes as "illicit" because of the NY AG's lengthy complaint, which accused those defendants, including Plaintiff's son's company from which Plaintiff sources his products, *see* Ex. G ¶¶ 391-408, of illegally marketing the addictive products to minors through colorful or fun packaging likely to attract children. Especially because the basis of the characterization is disclosed, Defendants' description is protected opinion.

### C.    Statement No. 1 Is Substantially True.

Where a statement is capable of being proven true or false, defamation law "overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 516 (1991). "Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Klayman v. Judicial Watch, Inc.*, 22 F.Supp.3d 1240, 1253 (S.D. Fla. 2014), *aff'd,* No. 14-13855 (11th Cir. Feb. 17, 2015); *see also Bishop v. Wometco Enters.*, 235 So.2d 759, 762 (Fla. 3d DCA 1970) (a "workable test" for determining whether an article is substantially true is to "eliminate the alleged falsities" and assess how the "common mind would understand" it without those words). A statement is only actionable if it is "substantially and materially false, not just if it is technically false." *Klayman*, 22 F.Supp.2d at 1253–54.

While Defendants concede that Plaintiff is not the co-founder of Safa Goods (and they promptly corrected the Article accordingly), it is undisputed that Plaintiff is sufficiently connected to Safa Goods such that the "gist" or "sting" of the Original Article is true. Plaintiff's representative did not dispute that Plaintiff's son and nephew are the co-founders of Safa Goods, and admitted that Plaintiff's company sources products from Safa Goods. Ex. E at 2-3. Additionally, Plaintiff has not disputed previous statements in court filings that, at least at the time, Orange Wholesale was an "affiliate" of Safa Goods. *See* Ex. B at 2. Nor has Plaintiff disputed appearing in court alongside his son and nephew over a trademark dispute regarding their businesses' sale of e-cigarettes made in China. *See id.* Accordingly, there is no substantive difference between the "gist" or "sting" of the Original Article's statement that Plaintiff is a co-founder of Safa Goods and the truth—that his company sources from and/or is an affiliate of Safa and the co-founders are his close family members.

## D.    Plaintiff Has Not Alleged Actual Malice as to Any of the Statements

In addition to the deficiencies detailed above, the SAC should be dismissed in its entirety because Plaintiff has failed to plausibly allege actual malice. Under the First Amendment, a public figure "may recover for injury to reputation only on clear and convincing proof" of "actual malice"—a state of mind defined as "knowledge of ... fals[ity] or ... reckless disregard of whether it was false or not." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 334, 342 (1974); *see also Michel*, 816 F.3d at 702. "Allegations of actual malice in a defamation context must satisfy the

*Twombly/Iqbal* plausibility standard; thus, the facts a plaintiff alleges must support a reasonable inference that the speaker or publisher made the false statement knowing it was false or with reckless disregard as to its falsity." *Reed*, 2025 WL 1874638, at *2.

Plaintiff is undoubtedly a limited public figure, at minimum, and must allege and prove actual malice. "Determining whether an individual is a public figure—and thus subject to the actual malice analysis—is a question of law for the court to decide." *Michel*, 816 F.3d at 702. "Limited public figures ... are individuals who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Turner*, 879 F.3d at 1272–73.[6] The "court must determine whether the individual played a central role in the controversy" and "whether the alleged defamation was germane to the individual's role in the controversy." *Id.* That Shriteh is a limited public figure is evident from the SAC.[7]

The Article focuses on two public controversies in which Shriteh played a central role: his alleged "anti-Israel" past, consisting of his prominent journalism career, and his current sale of addictive e-cigarettes. Plaintiff alleges that he "was a respected journalist working in Gaza and reporting for the *New York Times,*

---

[6] By contrast, "[g]eneral public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice." *Turner*, 879 F.3d at 1272.

[7] Under New York law, actual malice is the correct standard to apply regardless of whether Plaintiff is a public figure because the Article was "about 'an issue of public interest.'" *Bobulinski v. Tarlov*, 758 F.Supp.3d 166, 177 (S.D.N.Y. 2024) ("New York ... anti-SLAPP... law applies the actual malice standard" to issues of public interest) (citing N.Y. Civ. Rights Law § 76-a(2)), *appeal withdrawn*, 2025 WL 1009663 (2d Cir. Mar. 31, 2025).

*Reuters,* and *CBS News,* whose courageous efforts were recognized in 1993 when he received the John R. Aubuchon 'International Freedom of the Press Award.'" SAC ¶ 20. Plaintiff also notes—as did the Article—that he "co-authored a book, *Beyond Intifada,* with esteemed Israeli professors, Haim and Rivca Gordon, which … has been recognized for its contribution to understanding the human impact of the Israeli-Palestinian conflict." *Id.* ¶ 21. *See, e.g., Fairbanks v. Roller*, 314 F.Supp.3d 85, 88 (D.D.C. 2018) (self-described "political activist and a grassroots journalist who uses social media to reach the public" qualified as a public figure); *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1190 (9th Cir. 1989) ("prominent and outspoken feminist author and activist" was a public figure). This public role is clearly germane to the statements regarding his being "Israel-hating" and "having a history of anti-Israel advocacy." After all, his work as a journalist sparked his arrest and the public accusations of working with Hamas. *See* Ex. A.

Also, Plaintiff, the self-proclaimed King of Vapes, is a prominent businessman, owning and operating 17 stores in Florida that sell e-cigarettes. SAC ¶ 16. This, too, is a central matter of the Article, which reports on a lawsuit related to the sale of these products. Plaintiff admits to sourcing his products from his son's company, Safa Goods, which is among the defendants in the New York AG's case. *Jacoby v. Cable News Network, Inc.*, 2021 WL 5858569, at *3 (11th Cir. Dec. 10, 2021) (finding limited public figure because of "allegations concerning the ethics with which [plaintiff] and his businesses … have operated"). And Plaintiff's own business practices have been subject to litigation before. *See* Ex. B at 2 ("three

Shritehs recently appeared in … court filings over a trademark dispute" regarding e-cigarettes). This Court can and should hold that Plaintiff is at least a limited public figure who must sufficiently allege actual malice.

"The standard of actual malice is a daunting one." *Howard v. Antilla*, 294 F.3d 244, 252 (1st Cir. 2002). A plaintiff must allege facts sufficient to give rise to a reasonable inference that the false statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). The test is not objective. Rather, courts ask "whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 702–03.

"[E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Michel*, 816 F.3d at 702. Accordingly, courts routinely dismiss such claims where, as here, the plaintiff merely recites the legal standard for actual malice. *See, e.g.*, *Biro v. Condé Nast,* 807 F.3d 541, 546 (2d Cir. 2015); *Arpaio v. Cottle*, 404 F.Supp.3d 80, 84–85 (D.D.C. 2019) (dismissing claim where plaintiff "[did] no more than recite the applicable legal standard" and offer "unadorned claim[s] of animus and bias," which "come nowhere close" to plausibly pleading actual malice).

Here, Plaintiff has not even begun to adequately allege that the statements

were published with actual malice. He merely recites the legal standard, baldly asserting the statements were made with "actual malice and in bad faith, with ill-will directed towards SHRITEH and a total disregard for the truth." SAC ¶¶ 43, 47; *Reed*, 2025 WL 1874638, at *3 (rejecting "a litany of conclusory allegations that are merely formulaic recitations of the 'actual malice' element which, alone, are insufficient"). Plaintiff claims that Defendants intended "to push a false narrative, relying on ethnic prejudice and bombastic claims, rather than facts." SAC ¶¶ 27. 25.  But, even if true (it is not), this is merely an allegation of poor motive, which does not meet the extraordinary actual malice standard. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) ("Petitioner is plainly correct in recognizing … that a newspaper's motive in publishing a story … cannot provide a sufficient basis for finding actual malice.").

Plaintiff noticeably ignores Defendants' pre-litigation corrections and their inclusion of statements from him and his representatives in the Revised Article—conduct that blatantly ***contradicts*** a finding of actual malice. *See Levan v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230, 1238 n.22 (11th Cir. 1999) ("[T]he fact that ABC made [corrections] does not constitute clear and convincing evidence ABC acted with actual malice at the time it broadcast its report."); *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958–59 (8th Cir. 2020) (reasoning that defendant's prompt correction of the mistake in its reporting "weighs against malice"); *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005) ("[P]rompt follow-up article quoting [plaintiff's] version of his remarks and the

opinions of his supporters is evidence of the absence of actual malice, not the opposite.").

As noted above, Defendants promptly corrected the inadvertent factual inaccuracy about Plaintiff being the co-founder of Safa Goods, and made several other discretionary revisions in an exercise of good faith—such as including numerous statements from Plaintiff's own representative. Thus, not only has Plaintiff failed to allege facts supporting actual malice, but the facts in the SAC affirmatively rebut it.

### E.    Plaintiff Fails to Properly Allege Damages

Plaintiff has alleged no factual basis for any damages, only claiming unrelated injuries suffered by his son. *See Edelstein v. WFTV, Inc.*, 798 So.2d 797, 798 (Fla. 4th DCA 2001) (per curiam) ("a plaintiff suing a media defendant must nevertheless prove actual injury" even for a defamation *per se* claim). Further, he is ineligible for punitive damages because Defendants complied with Florida's retraction requirements.

To support his defamation per quod claim, Plaintiff "must specially plead and prove special damages proximately resulting from the defamation." *Open Sea Distrib. Corp. v. Artemis Distrib., LLC*, 692 F.Supp.3d 1151, 1202 (M.D. Fla. 2023). "Special damages required for defamation per quod are such as are computable in money." *Id.* at 1203. And he may only recover damages for his own harm. *See Risk Ins. & Reinsurance Sols. v. R + V Versicherung*, 2007 WL 9700868, at *6 n.10 (S.D. Fla. June 6, 2007) (ruling that a party "cannot recover for alleged damages

to a non-party."). Because the SAC is completely devoid of facts regarding damages ***to Plaintiff***, he has alleged no damages at all for which he can recover. The only specific allegation is for his son's detention at JFK airport. SAC ¶¶ 28–29. However, his son is not a party to this case, and Plaintiff cannot recover damages on his behalf.

Second, Plaintiff is ineligible for punitive damages pursuant to Florida statutory law. In Florida, defamation plaintiffs are required to provide notice to media defendants of their alleged defamatory conduct at least five days before filing suit. Fla. Stat. Ann. § 770.01. Because the *Post* is a daily publication, it is then afforded 10 days to address a plaintiff's allegations. *Id.* 770.02(2)(a). This law was meant to curtail lawsuits, such as this, where the appropriate corrections can be made without litigation. Plaintiff cannot evade these requirements, where, as here, Defendants corrected the only factual inaccuracy within the 10-day statutory requirement. *See* SAC ¶ 35 (alleging Plaintiff's representative contacted Defendants on March 17, 2025); *see also* Ex. B (Revised Article with revision date of March 25, 2025) at 1. Accordingly, Plaintiff cannot recover punitive damages related to his claim.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC in its entirety with prejudice and for such and other further relief as is just and proper.

Dated: September 15, 2025

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Scott D. Ponce*
Scott D. Ponce (FBN 169528)
Benjamin Tyler (FBN 1003552)
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
(305) 374-8500
(305) 789-7799 (fax)
scott.ponce@hklaw.com
benjamin.tyler@hklaw.com

Laura R. Handman
(admitted *pro hac vice*)
Chelsea T. Kelly
(admitted *pro hac vice*)
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Phone: (202) 973-4224
Email: laurahandman@dwt.com
        chelseakelly@dwt.com

Leena Charlton
(*pro hac vice* pending)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Tel.: (212) 489-8230
Email: leenacharlton@dwt.com

*Attorneys for Defendants*
*NYP Holdings, Inc. and Josh*
*Christenson*

## LOCAL RULE 3.01(G) CERTIFICATION

Counsel for Defendants hereby certify that on September 11, 2025, counsel for Defendants conferred with counsel for Plaintiff via Zoom video-conference. Counsel for Plaintiff stated that Plaintiff opposes the relief sought in Defendants' motion to dismiss.

*s/ Scott D. Ponce*
Scott D. Ponce

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 15th day of September, 2025, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system.

*s/ Scott D. Ponce*
Scott D. Ponce