UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAHER SHRITEH,

     Plaintiff,

v.                           Case No.:  2:25-cv-704-SPC-DNF

NYP HOLDINGS, INC. and JOSH
CHRISTENSON,

     Defendants.

---

## OPINION AND ORDER

Before the Court is Defendants NYP Holdings, Inc. and Josh Christenson's (jointly, "Defendants") Motion to Dismiss. (Doc. 33). Plaintiff Taher Shriteh responded (Doc. 36), and Defendants replied (Doc. 42). For the below reasons, the Court grants the motion.

### Background[1]

This is a defamation case. Plaintiff operates seventeen vape (or e-cigarette) retail stores in southwest Florida under the trademark name "the King of Vape." Christenson, writing for the *New York Post*, authored and published an article about Plaintiff titled, "Florida's Israel-hating 'King of

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

Vape' Faces Bipartisan Crackdown on Sale of Illicit, Kid-Friendly Chinese E-cigs." (Doc. 33-2). The following is a summary of the article.

Plaintiff, a.k.a. the "King of Vape," is the co-founder of Safa Goods, one of the largest vape distributors in the United States. Safa Goods sells Chinese-produced vape brands in over a dozen "King of Vape" retail stores in southwest Florida. New York Attorney General Letitia James sued Safa Goods (among others) for illegal and fraudulent business practices that target underage e-cigarette users. United States Senator Ashley Moody also announced plans to protect children from illicit vapes. In Florida, Governor Ron DeSantis has cracked down on illicit vape sales. And the Food and Drug Administration is doing the same. All this government action, according to the article, demonstrates the "hotseat" in which Plaintiff sits "as lawmakers and officials try to throttle his distribution of illicit e-cigarettes manufactured in China." (Doc. 33-2).

According to the article, Plaintiff not only sells illicit vapes, but also has a "history of anti-Israel advocacy," which shows he is an Israel-hater. In February 1991, an Israeli court found that Plaintiff aided Hamas while working as a freelance reporter in the Gaza Strip. The Israeli judge found that Plaintiff "crossed the line in his work as a journalist" and "became an activist for a terror organization" by reporting information from a Hamas leaflet to readers. Defendants obtained this information from a 1991 *New York Times*

article (Doc. 33-4), which they hyperlinked in their article. Plaintiff also authored a 2003 book *Beyond Intifada: Narratives of Freedom Fighters in the Gaza Strip*, which covered the uprising of Palestinians against Israel beginning in 1987. And Plaintiff's relative (and director of Safa Goods) previously worked at United Nations Relief and Works Agency for Palestinian Refugees. The United States ceased all funding to this organization because some of its employees helped Hamas conduct the October 7, 2023, attack that killed 1,200 people.

After Plaintiff complained about the article, Defendants published a revised version titled, "Florida's 'King of Vape' Faces Bipartisan Crackdown on Family's Sale of Kid-Friendly Chinese E-cigs." (Doc. 33-3). However, the revised article still includes defamatory statements. (Doc. 29).

Plaintiff brings claims for libel per quod (count I) and libel per se (count II), alleging the following statements from the article are materially false:

1. Plaintiff was the cofounder of Safa Goods;
2. Plaintiff is involved in a lawsuit filed by New York Attorney General Letitia James;
3. Plaintiff sells illicit goods to minors;
4. Plaintiff is an "Israel hater" with a history of anti-Israel advocacy; and
5. An Israeli court ruled that Plaintiff was a supporter of the terrorist organization, Hamas.

These false statements harmed Plaintiff's reputation in the community and his lawful business ventures. (Doc. 29 ¶ 45). And Plaintiff's family recently faced

traumatic discrimination.  On May 29, 2025, Customs and Border Protection ("CBP") officers detained Plaintiff's son at John F. Kennedy International Airport in New York.  (Doc. 29 ¶¶ 28–29).

Although not alleged to be false, Plaintiff also objects to the article's statement that Plaintiff's relative previously worked at an organization with employees who helped Hamas conduct the October 7, 2023, attack.  (Doc. 29 ¶ 25).  He alleges Defendants included this statement "in a transparent attempt to link [Plaintiff] with terrorism and further tarnish his reputation." (*Id.*).

Defendants move to dismiss the case on several grounds.  They argue Plaintiff has not properly alleged actual malice or damages.  And they argue the alleged defamatory statements are either protected by the fair-report privilege, are protected opinions, or are substantially true.  (Doc. 33).

## Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible.  *See id.* at 570.  A claim is facially plausible

when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

## Analysis

The Court begins with the defamation standard. "To prove defamation under Florida law, a plaintiff must establish the following elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory."[2] *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008)). "Words are defamatory under Florida law when they tend to subject one to hatred, distrust, ridicule, contempt or disgrace"; "to injure one in one's business or profession"; or "to deter third persons from associating or dealing

---

[2] No party challenges application of Florida defamation law generally, only whether New York or Florida law applies to Defendants' fair-report-privilege defense. (Doc. 33 at 15–17; Doc. 36 at 7–9). "[T]he law of a foreign state may control one issue while the law of Florida controls another." *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1578 (11th Cir. 1990). As such, the Court applies Florida defamation/libel law but addresses the choice-of-law for the privilege separately. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 695 (11th Cir. 2016) ("Because no party has challenged the choice of New York libel law, all are deemed to have consented to its application.").

with him." *Id.* at 1285 (quotation marks omitted).  But "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment."[3] *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).

Defamation claims can be proven by either defamation per quod or defamation per se.  Defamation per quod "requires an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement[.]" *Block v. Matesic*, 789 F. Supp. 3d 1131, 1154 (S.D. Fla. 2025) (citation and quotations omitted).  Defamation per se, on the other hand, "does not require any additional explanation in order to prove the defamatory nature of the statement." *Id.* (citation and quotations omitted).  Put differently, "if a statement requires explanation of context for it to be defamatory, it may qualify as defamation *per quod*, even if it isn't defamation *per se.*" *Id.* at 1155 (citation and quotations omitted); *see also Scobie v. Taylor*, No. 13–60457–CIV, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013) ("When context is considered

---

[3] Defamation can be either slander or libel.  "Slander is typically based on defamatory spoken words, while libel is based on written or other non-spoken defamatory statements." *Risk Ins. & Reinsurance Sols. v. R + V Versicherung*, No. 04-61119-CIV, 2007 WL 9700868, at *6 (S.D. Fla. June 6, 2007) (citations omitted).  Plaintiff's claim is libel given it arises from Defendants' written statements in the article.  The Court uses the terms libel and defamation interchangeably throughout the Order.

and 'extrinsic facts and innuendo are needed to prove the defamatory nature of the words,' the statements are not defamatory per se.").

"In determining whether language is defamatory under Florida law, the publication made should be construed as the common mind would understand it, and not in their mildest or most grievous sense." *Johnston*, 36 F.4th at 1275 (alteration adopted, quotation marks omitted). "The publication must also be considered in its totality and in context rather than piecemeal and in isolation." *Id.* (quotation marks omitted); *see also Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. Dist. Ct. App. 1984) (explaining the Court "must construe the statement in its totality, examining not merely a particular phrase or sentence, but all the words used in the publication").

With these general principles in mind, the Court turns to the merits. First, the Court examines whether Plaintiff has alleged actual malice (or is even required to do so). Second, the Court addresses whether Plaintiff has properly alleged damages. And finally, the Court tackles the alleged defamatory statements.

## A.    **Actual Malice**

Defendants argue Plaintiff has not plausibly alleged actual malice. "Because of the expressive freedom guaranteed by the First Amendment, a defendant may not be held liable for defaming a public figure about a matter of public concern unless he is shown to have acted with actual malice." *Berisha*

*v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020) (citations omitted). "Determining whether an individual is a public figure—and thus subject to the actual malice analysis—is a question of law for the court to decide." *Michel*, 816 F.3d at 702.

Plaintiff disputes that he is a public figure required to allege actual malice. (Doc. 36). But the Court rejects this argument. In the second amended complaint, Plaintiff alleges that before immigrating to the United States in 2000, he was "a respected journalist working in Gaza and reporting for the *New York Times, Reuters*, and *CBS News*, whose courageous efforts were recognized in 1993 when he received the John R. Aubuchon International Freedom of the Press Award." (Doc. 29 ¶ 20). He also alleges that he co-authored a book, *Beyond Intifada*, with "esteemed Israeli professors" which "has been recognized for its contribution to understanding the human impact of the Israeli-Palestinian conflict." (*Id.* ¶ 21). And he repeatedly alleges that Defendants issued and made the defamatory statements with actual malice. (*Id.* ¶¶ 43, 47, 53, 59). He cannot now dispute his status as a public figure. *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1122 (S.D. Fla. 2021) (finding the plaintiff was a public figure where he described himself as a *New York Times* bestselling author and political commentator and "concedes the point by attempting to plead facts in support of the element of actual malice in his Complaint").

As a public figure, Plaintiff must plead actual malice.[4] To do so, he "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Michel*, 816 F.3d at 702 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). The actual malice inquiry is subjective and requires determining whether the defendant, "instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.* at 703. "Importantly, ill-will, improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice." *Project Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283 (11th Cir. 2024) (cleaned up) (citation omitted).

In the second amended complaint, Plaintiff offers nothing more than conclusory allegations that Defendants made the defamatory statements "with intent to push a false narrative," "with utter disregard for their veracity" and

---

[4] Historically, a plaintiff did not need to allege actual malice or damages for a defamation per se claim. *See Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. Dist. Ct. App. 1973) (explaining per se defamatory statements "are so obviously defamatory . . . that the mere publication of them gives rise to an absolute presumption both of malice and damage"). However, "the Florida Supreme Court's decision in *Mid-Florida Television Corp.* [*v. Boyles*, 467 So. 2d 282 (Fla. 1985)] makes clear that a plaintiff suing a media defendant must nevertheless plead malice and damages" in defamation per se cases. *Corsi*, 519 F. Supp. 3d at 1119 (citing *Edelstein v. WFTV, Inc.*, 798 So. 2d 797 (Fla. Dist. Ct. App. 2001)); *see also Reed v. Chamblee*, No. 3:22-CV-1059-TJC-PDB, 2023 WL 6292578, at *23 n.10 (M.D. Fla. Sept. 27, 2023), *aff'd*, No. 24-10058, 2025 WL 1874638 (11th Cir. July 8, 2025) (agreeing with *Corsi*'s analysis on actual malice). Because Plaintiff sues media defendants, he must allege actual malice and damages for his libel per se claim to survive.

impact, "with reckless disregard as to their truth," "with actual malice," "with ill-will," and Defendants "knew or should have known" that the statements were false.  (Doc. 29 ¶¶ 27, 34, 38, 39, 42, 43, 51, 53, 57, 59).  Without more, these allegations are insufficient.  *See Reed v. Chamblee*, No. 24-10058, 2025 WL 1874638, at *3 (11th Cir. July 8, 2025) (finding insufficient the plaintiff's conclusory assertions that the defendant acted with actual malice); *Corsi*, 519 F. Supp. 3d at 1122 (finding the plaintiff's conclusory allegations that the defendants "knew that the statements made . . . were false, or at a minimum, acted with recklessness as to their truthfulness" were insufficient to support a defamation claim).  So the Court dismisses Plaintiff's complaint without prejudice for failure to plausibly allege actual malice.

## B.    Damages

To state a defamation per quod claim, the plaintiff must allege and prove "special damages."[5]  *Block*, 789 F. Supp. 3d at 1155 (citing *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. Dist. Ct. App. 1999)); *see also Frey v. Minter*, 829 F. App'x 432, 434 (11th Cir. 2020) (noting that Florida law "require[s] proof of special damages for a plaintiff to sustain a claim of defamation *per quod*").  "Special damages are actual, out of pocket losses which

---

[5] As noted above (*supra* n.2), in Florida, a plaintiff suing a media defendant for defamation per se must allege damages.  *See also Blake v. Giustibelli*, 182 So. 3d 881, 884–85 (Fla. Dist. Ct. App. 2016) (explaining the Florida Supreme Court's *Mid-Florida Television Corp.* decision recognized that damages must be proven in libel per se claims involving media defendants).

must be proven by specific evidence as to the time, cause, and amount, and their chief characteristic is a realized or liquidated loss." *Block*, 789 F. Supp 3d at 1155 (cleaned up and citation and quotation marks omitted). Allegations for special damages must be pled in more than "a conclusory manner; rather words actionable *per quod* are those whose injurious effect must be established by due allegation and proof." *Anderson v. Smith*, No. 3:19-CV-222-J-20JRK, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020) (cleaned up and citation omitted).

Defendants correctly argue Plaintiff fails to plausibly allege damages. In the second amended complaint, Plaintiff conclusorily alleges Defendants' false statements harmed his reputation in the community and his lawful business ventures. (Doc. 29 ¶ 45). And he broadly alleges he "has been damaged" as a "proximate result" of Defendants' statements. (*Id.* ¶¶ 46, 58). With no factual support, these allegations are insufficient. *See Flynn v. Cable News Network, Inc.*, No. 8:22-CV-343-MSS-SPF, 2023 WL 5985193, at *5 (M.D. Fla. Feb. 22, 2023); *Anderson*, 2020 WL 10058207, at *5.

Plaintiff also alleges his family recently faced traumatic discrimination because of the defamatory statements. Specifically, on May 29, 2025, CBP officers detained Plaintiff's son at John F. Kennedy International Airport in New York. (Doc. 29 ¶¶ 28–29). Defendants argue Plaintiff cannot collect damages stemming from this incident because he did not suffer the alleged

11

harm himself.  Plaintiff does not respond to this point, and the Court otherwise agrees with Defendants.  *See* Restatement (Second) of Torts § 621 (1977) ("One who is liable for a defamatory communication is liable for the proved, actual harm caused to the reputation *of the person defamed*." (emphasis added)). Because Plaintiff fails to sufficiently allege damages, the Court dismisses Plaintiff's complaint without prejudice.

## C.    Defamatory Statements

Plaintiff identifies six purportedly defamatory statements in the article. The Court, considering each statement in its totality and in context, addresses each in turn.

### Statement 1: Plaintiff co-founded Safa Goods

The article states that Plaintiff co-founded Safa Goods.  Plaintiff asserts this is false.  Defendants concede Plaintiff is not a co-founder of Safa Goods, but they argue the statement is nevertheless "substantially true."   Under Florida's "substantial truth" doctrine, "a statement does not have to be perfectly accurate to avoid being defamatory if the 'gist' or the 'sting' of the statement is true." *Block*, 789 F. Supp. 3d at 1154 (quoting *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234 (Fla. Dist. Ct. App. 2021)).   "The gist of any statement within a publication or broadcast is found only by reference to the entire context." *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001).

Defendants argue that although Plaintiff is not the co-founder of Safa Goods, he is sufficiently connected to Safa Goods such that the "gist" or the "sting" of the statement is true.  Plaintiff's son and nephew are the actual co-founders of Safa Goods, Plaintiff sources products from Safa Goods, Orange Wholesale (a company that Plaintiff owns that was mentioned in the revised article) is an "affiliate" of Safa Goods, and Plaintiff appeared in court with his son and nephew over a trademark dispute regarding their business' sale of Chinese-manufactured e-cigarettes.  (Doc. 33 at 19).  The Court does not buy this argument.

The "gist" of the statement is what it says: that Plaintiff co-founded Safa Goods.  That statement is false.  The fact that Plaintiff's family members co-founded Safa Goods does not render the statement substantially or even partially true.  And Plaintiff's other purported affiliations with Safa Goods are not the same as being the co-founder or having any sort of ownership in Safa Goods, especially when considered in context.

The article states Plaintiff co-founded Safa Goods, which faces a New York lawsuit and other government action for its sale of illicit e-cigarettes.  The insinuation is that through his ownership of Safa Goods, Plaintiff is subject to a "bipartisan crackdown" and "in the hot seat."  (Doc. 33-2).  But Plaintiff does not own Safa Goods, so Plaintiff is not facing any sort of "crackdown."  *See Johnston*, 36 F.4th at 1275 (quoting *Jews For Jesus*, 997 So. 2d at 1108)

(explaining words can be defamatory "if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them" (quotation marks omitted)).  Plaintiff is not otherwise named in the New York lawsuit.  (Doc. 33-8).  And there is no reference in the article suggesting Senator Moody, the FDA, or Governor DeSantis specifically targeted Plaintiff in their efforts to curb illicit e-cigarette sales.

Ultimately, the gist of the article is two-fold: (1) Plaintiff is in the hot seat because of Safa Goods' illicit sales, and (2) Plaintiff hates Israel.  The erroneous ownership link between Plaintiff and Safa Goods invalidates half the article.  So the statement is not substantially true, and this basis for Plaintiff's defamation claim survives.

### Statement 2: Plaintiff is involved in a lawsuit filed by New York Attorney General Letitia James

Plaintiff argues that Defendants erroneously stated in the article that he is a party to the lawsuit filed by the New York Attorney General, as he has not been named in any legal complaint filed against Safa Goods.  (Doc. 29 ¶¶ 13–14).  The article contains no such assertion.  Rather, it states that Safa Goods is involved in a lawsuit filed by the New York Attorney General.  Although the article's implication is that Plaintiff is subject to the lawsuit, any defamation arising from this implication is encompassed in statement 1.  So the Court dismisses statement 2 as a basis for Plaintiff's defamation claim.

*Statement 3: Plaintiff sells illicit e-cigarettes to minors*

Plaintiff alleges the article's claim that he deals in "illicit" goods sold to minors is "entirely baseless and an utter misrepresentation of the facts" because he "follows all applicable state and federal age regulations regarding the sale of vape and tobacco products," and his stores only sell to customers over the age of twenty-one. (Doc. 29 ¶¶ 15–18). Defendants argue their use of the term "illicit" to characterize the e-cigarette sales is protected opinion. (Doc. 33 at 18).

Under Florida law, "[a] statement is pure opinion when it is commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener." *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 459 (Fla. Dist. Ct. App. 2023). "Statements of pure opinion are generally not actionable as defamation because, unlike a statement of fact, a statement of pure opinion is not readily capable of being proven false." *Bell*, 2025 WL 1148677, at *6 (citation omitted). "[W]hether a statement is one of fact or opinion is a question of law for the court and not a jury." *Skupin v. Hemisphere Media Grp., Inc.*, 314 So. 3d 353, 356 (Fla. Dist. Ct. App. 2020).

As an initial matter, Plaintiff objects to the article stating that he sells illicit goods *to minors*. But the Court's sees no such assertion. The article mentions Plaintiff is in the hot seat because he distributes illicit e-cigarettes manufactured in China. But there is no mention of Plaintiff selling illicit vapes

*to minors*.[6]  Plaintiff must clarify the basis of this alleged defamatory statement.

In any event, the Court is not convinced Defendants' statement that Plaintiff deals illicit e-cigarettes is opinion.  Whether Plaintiff sells illicit substances can be proven false, so it is not a pure opinion.  *See Bell*, 2025 WL 1148677, at *6; *see also Pierce v. Better Holdco, Inc.*, No. 22 CIV. 4748 (AT), 2023 WL 6386920, at *10 (S.D.N.Y. Sept. 29, 2023) (statement that the plaintiff had been "cooking the books" and "fudging the numbers" was not opinion because it "refer[ed] to a specific instance of Pierce's conduct that is capable of being proved true or false"); *Trump v. Chi. Trib. Co.,* 616 F. Supp. 1434, 1435 (S.D.N.Y. 1985) ("[W]hen the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed.").

### Statement 4: Plaintiff is an "Israel hater" with a history of anti-Israel advocacy

Plaintiff alleges the article's claim that he hates Israel and has a history of anti-Israel advocacy is "utterly devoid of factual support."  (Doc. 29 ¶ 19).  Defendants argue this accusation is an opinion.  The Court does not agree.

---

[6] The article addresses Safa Goods dealing to minors, which it imputed to Plaintiff through his ownership of Safa Goods.  But any defamation arising from this false link is encompassed in statement 1.

Defendants argue that referencing Plaintiff as an Israel hater is non-actionable name-calling.  Although accusations of bigotry or bias, such as a person being an Israel hater, generally amount to "mere name calling," they "may rise to the level of defamation where the accusation relates to specific or concrete acts." *UTEX94 LLC v. Danta*, No. 18-CV-80718, 2018 WL 11472417, at *4 (S.D. Fla. Nov. 7, 2018) (internal citation omitted) (collecting authority). "Where the accusation is vague, nonspecific, or without accompanying explanation or elaboration, however, it does not contain a provably false assertion of fact required to state a claim for defamation." *Id.* (citation omitted).

Defendants' accusation that Plaintiff hates Israel is not vague or nonspecific.  Rather, the article elaborates with at least one specific act—that Plaintiff aided Hamas.  The article teeters on the edge between mere name-calling and accusing Plaintiff of being a Hamas affiliate.  *Cf. Forte v. Jones*, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("[I]t is important to stress that it is the allegation of membership in the Ku Klux Klan that is actionable; the allegation that a person is a 'racist,' on the other hand is not actionable because the term 'racist' has no factually-verifiable meaning."); *Ward v. Zelikovsky*, 643 A.2d 972, 983 (N.J. 1994) (finding the defendant's statement that the plaintiff hated Jews was non-actionable name-calling because the defendant "made no factual statements and did not appear to rely on factual

statements known to the audience that would transform his claim of anti-Semitism into an actionable statement").

Defendants' argument has yet another angle. As mentioned above, "[a] statement is pure opinion when it is commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener." *Ozyesilpinar*, 365 So. 3d at 459. Defendants argue their accusation that Plaintiff is an Israel hater is supported by facts—that an Israeli judge found Plaintiff was aiding Hamas. This argument is unmoving because (as discussed in the following section), the accuracy of Defendants' portrayal of the Israeli judge's statements is contested and unclear at this stage. And "a speaker cannot invoke a 'pure opinion' defense, if the facts underlying the opinion are false or inaccurately presented." *Lipsig v. Ramlawi*, 760 So. 2d 170, 184 (Fla. Dist. Ct. App. 2000).

This statement may ultimately be an instance of mere name-calling. But "[c]onstruing the allegations in the Complaint in the light most favorable to Plaintiff, the Court cannot conclude at this stage that [Defendants'] comments are mere rhetoric and cannot constitute defamatory publications." *Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 5305468, at *4 (S.D. Fla. Oct. 15, 2014). At this stage, "the Court is not willing to say, as a matter of law, that [Defendants'] insults are incapable of being interpreted as false facts." *Id.* So this basis of Plaintiff's defamation claim survives.

*Statement 5: An Israeli court ruled that Plaintiff was a supporter of the
terrorist organization, Hamas*

Defendants assert in the article that an Israeli judge found Plaintiff

"crossed the line in his work as a journalist" and "became an activist for a terror

organization." (Doc. 33-2). Plaintiff alleges this assertion is false because he

has never been a member of Hamas, supported Hamas in any capacity, been

affiliated with Hamas in any manner, or been convicted of any crime in any

country. (Doc. 29 ¶¶ 22–24). His response sheds further light on his

allegations. He explains the Israeli judge's quote was made during a bail

hearing and, thus, there was no actual finding that Plaintiff aided Hamas.

(Doc. 36 at 6).

Moving to dismiss this claim, Defendants rely on New York's fair-report

privilege as a defense. New York codified its fair-report privilege in New York

Civil Rights Law section 74, as follows:

> A civil action cannot be maintained against any person,
> firm or corporation, for the publication of a fair and true
> report of any judicial proceeding, legislative proceeding or
> other official proceeding, or for any heading of the report
> which is a fair and true headnote of the statement
> published.

The statute protects reports of proceedings which are "made in the public

interest." *Williams v. Williams*, 23 N.Y. 2d 592, 599 (N.Y. 1969); *see also*

*Carroll v. Trump*, 664 F. Supp. 3d 550, 557 (S.D.N.Y. 2023) (explaining the

privilege's purpose is "to encourage the dissemination of information

concerning the judicial branch of government and thereby to serve the public interest in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice" (citations omitted)).    Its application ultimately turns on whether the allegedly defamatory publications are a "fair and true" report of an official proceeding, which the Court may determine as a matter of law.    *See Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 457 (E.D.N.Y. 2013) (explaining the Court "may determine as a matter of law whether allegedly defamatory publications are 'fair and true' reports of official proceedings").

Plaintiff responds that the Court should apply Florida's fair-report privilege but, either way, the privilege does not shield Defendants from liability.  The Court need not address the choice-of-law issue now because even New York's privilege does not protect Defendants at this stage.

Here is the relevant line from the article:

> In February 1991, however, an Israeli judge found that [Plaintiff] "crossed the line in his work as a journalist" and "became an activist for a terror organization" by reporting out information from a Hamas leaflet to readers, the *[New York] Times* reported at the time.

(Doc. 33-2).  The article's report is based on the *New York Times*' portrayal of the Israeli proceeding; Defendants did not reference the actual source, *i.e.*, a court transcript of the proceeding.  On that score, Plaintiff argues the fair-

report privilege cannot apply because it only extends to reporting on the proceeding itself.  (Doc. 36 at 6).

Defendants maintain they do not lose the privilege simply because they relied on a news report of the proceeding rather than the primary source (a transcript written in Hebrew).  Under New York law, they are correct.  *See Cummings v. City of New York*, No. 19-CV-7723 (CM)(OTW), 2020 WL 882335, at *18 (S.D.N.Y. Feb. 24, 2020).  The *Cummings* court explained, "how a reporter gathers information concerning a judicial proceeding is immaterial provided his or her story is a fair and substantially accurate portrayal of the events in questions."  *Id.* (cleaned up and citation omitted).  Applying this standard, Defendants' reliance on the *New York Times* article does not defeat the privilege so long as they provided a fair and substantially accurate portrayal of the Israeli proceeding.  But without the transcript of the hearing (and an accurate translation from Hebrew), the Court cannot make this determination.  Reviewing the underlying *New York Times* article does nothing because its recount of the proceedings could be inaccurate.

That's not all.  The parties agree the Israeli judge made the subject statement during a bail hearing.  They also agree the charges against Plaintiff were eventually dropped.  But the article omits this information.  Without this additional context, an ordinary reader could reasonably interpret the Israeli judge's statements as conclusive, incriminating findings, which apparently is

not the case.  So a question remains whether Defendants' reporting was "fair and accurate."  *See Mahn v. Allegis Grp., Inc.*, No. 1:24-CV-8326-GHW, 2025 WL 1504812, at *12 (S.D.N.Y. May 24, 2025) (explaining the privilege applies despite minor discrepancies if "they do not produce a different effect on a reader than would a report containing the precise truth"); *see also* Restatement (Second) of Torts § 611 cmt. f (explaining a newspaper that reports on derogatory parts of a proceeding but "fail[s] to publish the further proceedings that tend to vindicate the person defamed" may suggest the reporting was not fair).  The fair-report privilege does not shield Defendants at this stage.[7]

*Statement 6: Plaintiff's relative previously worked at an organization with employees that helped Hamas conduct the October 7, 2023, attack*

The relevant line in Defendants' article states: "Ahmed Shriteh, a relative of [Plaintiff] who serves as a director of Safa, previously worked at the United Nations Relief and Works Agency for Palestinian Refugees (UNRWA)— an organization to which the US halted all funding after it was revealed several of its employees helped Hamas carry out the Oct. 7, 2023, attack that killed

---

[7] The Court also questions whether the privilege applies here at all.  As mentioned above, the privilege's purpose is to protect reporters serving the public interest by providing accurate insight into ongoing judicial proceedings.  *See Carroll*, 664 F. Supp. 3d at 557; *see also* Restatement (Second) of Torts § 611 cmt. a ("The basis of this privilege is the interest of the public in having information made available to it as to what occurs in official proceedings and public meetings.").  This interest is properly served with contemporaneous reporting on a proceeding.  But the Israeli proceeding occurred over thirty years before Defendants published the article, so the reporting did not seem to further the contemplated public interest.

1,200 people." (Doc. 33-2). Plaintiff alleges that Defendants included this line "in a transparent attempt to link [Plaintiff] with terrorism and further tarnish his reputation." (Doc. 29 ¶ 25).

Defendants argue in a footnote that this statement is not actionable because it is not "of and concerning the plaintiff." (Doc. 33 at 17 n.1); *see also Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. Dist. Ct. App. 1997) (collecting cases) (explaining Florida law requires that any alleged defamation must be "of and concerning" the plaintiff). Plaintiff did not respond to this argument. And, notably, Plaintiff does not allege this statement is false. So the Court dismisses this basis of Plaintiff's defamation claim with prejudice.

Accordingly, it is now **ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 33) is **GRANTED.**

2. Plaintiff's second amended complaint (Doc. 29) is **DISMISSED without prejudice** as described in this Order.

3. On or before **February 25, 2026**, Plaintiff may file a third amended complaint. **Failure to do so will cause the Court to dismiss this case without further notice.**

**DONE** and **ORDERED** in Fort Myers, Florida on February 11, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record